UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20733-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STANLEY DUMERVIL, WHITNEY LIBERAL,
LAWRENCE BENOIT and STEVENSON
BENOIT

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant's Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47, 9/11/09) filed by defendant Stanley Dumervil (hereinafter "Dumervil").[1] On September 19, 2009, this case was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida. (DE# 50, 9/15/09). Having held an evidentiary hearing on October 13, 2009 and carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully recommends that the Defendant's Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47, 9/11/09) be **DENIED**.

## BACKGROUND

The defendants are charged by indictment with conspiracy to commit access

---

[1] Defendants Whitney Liberal, Lawrence Benoit and Stevenson Benoit have adopted the instant motion. See Order (DE# 54, 9/24/09) granting motion to adopt filed by Whitney Liberal; Order (DE# 68, 10/6/09) granting motion to adopt filed by Stevenson Benoit; Order (DE# 69, 10/6/09) granting motion to adopt filed by Lawrence Benoit.

device fraud in violation of Title 18, United States Code, Section 1029(b)(2), use of unauthorized access device in violation of Title 18, United States Code, Section 1029(a)(2), possession of fifteen or more counterfeit or unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3) and (2), aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1) and (2). See Indictment (DE# 31, 8/27/09). On September 11, 2009, Dumervil filed the instant Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47). The government filed its response on September 28, 2009. See United States' Response in Opposition to Motion to Suppress (DE# 57, 9/28/09). Dumervil filed his reply on October 5, 2009. See Defendant Dumervil's Reply to Government's Response to His Motion to Suppress (DE# 63, 10/5/09).

On October 13, 2009, the undersigned held an evidentiary hearing. The government presented the testimony of Officer Ericson Harrell. The defendants did not call any witnesses. The following exhibits were admitted into evidence: Government's Exhibits 1 through 4. The defendants did not introduce exhibits at the suppression hearing.

## FINDINGS OF FACT

On the night of August 11, 2009 and the early morning of August 12, 2009, Officer Ericson Harrell was on patrol in the City of North Miami Beach, Florida. Officer Harrell observed a silver Nissan Altima (hereinafter "vehicle") traveling at a high rate of speed. Officer Harrell used his radar detector to gauge that the vehicle was traveling 49 miles per hour in a 35 mile per hour area. As the vehicle passed Officer Harrell, he observed that the windows were darkly tinted. Section 316.2953 of the Florida Statues,

permits tinted windows where "the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range." Fla. Stat. § 316.2953.

Officer Harrell made a u-turn and proceeded to follow the vehicle. Officer Harrell conducted a records check of the vehicle's Georgia license plate to determine whether the vehicle had been stolen. The records check revealed that the vehicle had not been reported stolen and that it was a rental vehicle.

Officer Harrell turned his police lights on and the vehicle immediately pulled over. Using the police car's public address system, Officer Harrell instructed the driver of the vehicle to exit the vehicle with his driver's license and walk toward the police car. Officer Harrell was outside of his vehicle by the time Lawrence Benoit, the driver of the vehicle, reached the police car. Officer Harrell ran Lawrence Benoit's driver's license and determined that Mr. Benoit had a valid driver's license. Officer Harrell asked Lawrence Benoit if there were other occupants inside the vehicle. Lawrence Benoit responded that there were. Officer Harrell asked the other occupants of the vehicle to exit the vehicle for officer safety and so that Officer Harrell could test the windows to determine whether the tint on the windows exceeded the legal limit.

Officer Harrell conducted an initial pat down of the defendants for weapons shortly after making the traffic stop.[2]

The doors of the vehicle were already open. As Officer Harrell approached the left rear passenger side of the vehicle he noticed the odor of marijuana emanating from

---

[2] It is unclear when Officer Harrell patted down the defendants. His testimony was that he patted them down "shortly after the traffic stop was made."

the vehicle. While standing outside the vehicle and using a flashlight, Officer Harrell saw a small amount of marijuana residue (seeds and stems) on the backseat. Using a tint meter, Officer Harrell determined that the driver's window and the passenger window behind the driver exceeded the legal limit.

Officer Harrell asked Lawrence Benoit if he could search the vehicle for guns or drugs. Lawrence Benoit gave Officer Harrell verbal consent and motioned toward the vehicle with his right hand. Officer Harrell was holding Lawrence Benoit's driver's license at the time Mr. Benoit gave consent to search the vehicle. At the time, none of the occupants of the vehicle were handcuffed. Officer Harrell did not have his gun drawn at any time that evening.

Officer Harrell conducted a plain view observation of the interior of the vehicle. He noticed several cans of Fabreeze, a product used to eliminate odor,[3] on the backseat of the vehicle. Officer Harrell also observed a Target envelope in the front driver's seat, a Visa credit card loosely sitting on the center console and another Visa credit card underneath the passenger seat. Officer Harrell located a small amount of marijuana inside a baggie behind the center console and a wallet inside the unlocked glove compartment. Officer Harrell opened the wallet looking for drugs.[4] Inside the wallet, Officer Harrell found several pieces of identification that did not correspond to the occupants of the vehicle. Mr. Liberal's identification was also in the wallet. Officer Harrell asked Mr. Liberal about the wallet. Mr. Liberal advised that it was his wallet but denied having knowledge of the identification cards inside the wallet.

---

[3] In Officer Harrell's experience, Fabreeze is used to mask the odor of marijuana.

[4] Officer Harrell has previously found drugs inside wallets.

4

Officer Harrell also searched the trunk of the vehicle. Before searching the trunk, Officer Harrell asked Lawrence Benoit if he would not mind if Officer Harrell checked the trunk of the vehicle. Lawrence Benoit gave his verbal consent. Officer Harrell opened the trunk using a key that was in the ignition. Inside the trunk, Officer Harrell observed two empty Target bags, a pair of jeans, a lap top computer and two notebooks. Officer Harrell noticed a stack of patient face sheets from Jackson Memorial Hospital underneath the notebooks. See Government's Exhibit 4. The documents contained patient identification information. Id.

Officer Harrell proceeded to issue two citations to Lawrence Benoit, one for the driver's window and the other for the window behind the driver. See Government's Exhibit 3.

At one point, Officer Harrell asked the defendants about the marijuana he had located. Officer Harrell directed his question to the individuals who were sitting in the backseat of the vehicle. Defendant Dumervil raised his hand and said it was his. Officer Harrell immediately arrested Mr. Dumervil, handcuffed him and placed him in the backseat of his patrol car.

Officer Harrell called for backup. Detective Craig Caitlin and Officer Quiñones responded. Officer Quiñones arrived first. Detective Caitlin arrived after Officer Harrell had finished conducting his search of the vehicle and he was writing the citations.[5] Detective Caitlin went inside the vehicle and retrieved the two credit cards. Detective Caitlin ran the credit cards through a credit card reader and determined that the credit

---

[5] Detective Caitlin arrived approximately five to ten minutes after he was requested.

cards had been re-encoded with credit card account numbers that did not match the numbers on the card. Officer Harrell decided to arrest the defendants after it was established that the credit cards had been re-encoded. The defendants were placed under arrest for possession of fraudulent credit cards. The defendants were searched after they were arrested.

Pursuant to the written policy of the North Miami Beach Police Department, the vehicle was inventoried and towed.[6]

## ANALYSIS

**1.    Investigative Stop**

Defendant Dumervil's motion "requests that this Court preclude the government from introducing evidence obtained in violation of his constitutional rights arising from the illegal stop of the vehicle and search thereof." Defendant's Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47 at 8, 9/11/09). An investigative stop does not require probable cause. See Terry v. Ohio, 392 U.S. 1, 21 (1968). An investigative stop meets constitutional standards if the officer had a reasonable suspicion of criminal activity, based on articulable and specific facts known to him when the stop occurred. United States v. Thompson, 712 F.2d 1356, 1361 (11th Cir. 1983). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1 (1989), and from the collective knowledge of the officers involved in the stop. United States v. Cotton, 721 U.S. 350, 352 (11th Cir. 1983) cert.

---

[6] There is also an understanding between the North Miami Beach Police Department and the rental car company that if the police discover a rental vehicle with illegal tints, the police will immediately tow the vehicle and return it to the rental company. The undersigned did not consider this policy in determining whether the search of the vehicle was a legal search.

den. 465 U.S. 1108 (1984). Although this standard is considerably less demanding than probable cause, the Fourth Amendment nevertheless requires that the police officers articulate facts which provide some minimal, objective justification for the stop. Sokolow, 109 U.S. at 1585. Such facts may be derived from "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." United States v. Cortez, 449 U.S. 411, 418 (1981). The government has the burden of proving reasonable suspicion and probable cause by a preponderance of the evidence. United States v. Salzano, 158 F.3d 1107, 1115 (10th Cir. 1998); United States v. Matlock, 415 U.S. 164, 177-78 n.14 (1974).

     In the instant case, Officer Harrell had reasonable suspicion to initiate the stop because he observed the vehicle traveling above the speed limit and the vehicle's windows were too darkly tinted. Both are traffic violations in the state of Florida. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); see also United States v. Moody, 240 F. App'x 858, 858-59 (11th Cir. 2007) (finding reasonable suspicion where the defendant's windows were too darkly tinted). Thus, the investigative stop conducted by Officer Harrell was lawful.

**2.     Consent to Search**[7]

"[G]eneral[ly,] . . . warrantless searches are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." United States v. Gonzalez, 71 F.3d 819, 825 (11th Cir.1996) (quotations omitted). "[I]t is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search." Id. at 827. The government has the burden of proving that consent to search was given voluntarily, as an independent act of free will and not mere acquiescence to police authority. Florida v. Royer, 460 U.S. 491 (1983). To be considered voluntary, a consent to search must be the product of an essentially free and unconstrained choice. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Whether consent was in fact voluntary or a product of express or implied duress or coercion is to be determined by the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544 (1980).

The undersigned finds that the search of the vehicle conducted by Officer Harrell was pursuant to a valid consent provided by Lawrence Benoit.[8] The totality of the

---

[7] While all four defendants have standing to challenge the initial stop of the vehicle, Brendlin v. California, 551 U.S. 249 (2007), only the driver Lawrence Benoit has standing to challenge the search of the vehicle. See United States v. Miller, 821 F.2d 546, (11th Cir. 1987) (driver of vehicle allegedly borrowed from friend had standing to challenge warrantless search of vehicle); Rakas v. Illinois, 439 U.S. 128, 140, 143 n. 12 (1978) (holding that a passenger who has no possessory interest in a vehicle does not have a legitimate expectation of privacy in the interior of the vehicle because he does not have the right to exclude others from the vehicle). At the evidentiary hearing on October 13, 2009, the government agreed that Lawrence Benoit had standing to contest the search of the vehicle.

[8] The undersigned further notes that Officer Harrell had probable cause to search the vehicle after he detected the odor of marijuana coming from inside the

circumstances demonstrate that Lawrence Benoit's consent to the search of the vehicle was voluntary. Mr. Benoit was not constrained. Officer Harrell did not have his gun drawn or make any threats.[9] Based on the totality of the circumstances, the undersigned finds that Lawrence Benoit voluntarily permitted Officer Harrell to search the vehicle for drugs or guns.

The undersigned further finds that Officer Harrell acted properly in conducting an inventory of the vehicle after the arrest of the defendants. See South Dakota v. Opperman, 96 S.Ct. 3092, 3098 (1976) (finding "inventories pursuant to standard police procedures are reasonable"). Pursuant to North Miami Beach Police Department Policy 1.1.1.8, "[a]ll towed or impounded vehicles must be completely inventoried. This shall include the trunk, all compartments, packages, containers, bags or similar objects found therein." See Policy (DE# 57-2, 9/28/09).

---

vehicle. See United States v. Lueck, 678 F.2d 895, 903 (11th Cir.1982) (noting that it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search").

[9] Counsel for Lawrence Benoit argues that Mr. Benoit's consent was not voluntary because Officer Harrell still had Mr. Benoit's driver's license when he asked to search the vehicle. However, the Court must look at the totality of the circumstances. In the instant case, the totality of the circumstances demonstrate that Mr. Benoit's consent was voluntary. See United States v. Espinosa-Orlando, 704 F.2d 507, 510, 513 (11th Cir.1983) (concluding consent was voluntary after four officers had drawn their weapons, asked the defendant to step away from his car, told him to lie on the grass, and asked for consent while he was on the ground and one officer still had his weapon drawn). The facts of the instant case are not coercive. In United States v. Desir, 257 F.3d 1233, 1236 (11th Cir. 2001), the Eleventh Circuit found that consent had been voluntarily given "[e]ven though the police had [the defendant's] driver's license when he gave his consent to search, it was incident to a lawful stop for a traffic infraction which lasted only a few minutes and did not involve any use of coercion or force."

## CONCLUSION

The Defendant's Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47, 9/11/09) should be denied. Officer Harrell had reasonable suspicion to conduct an investigative stop of the defendant's vehicle after he observed the vehicle traveling above the speed limit and having tints that were excessively dark. Officer Harrell's subsequent search of the vehicle was legal pursuant to the valid consent. Because Officer Harrell had reasonable suspicion to conduct an investigative stop and obtained valid consent from Lawrence Benoit, he did not violate the defendants' Fourth Amendment rights.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Defendant's Motion to Suppress Evidence and Supporting Memorandum of Law (DE# 47, 9/11/09) be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Patricia A. Seitz, United States District Judge, before October 21, 2009.[10] See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). **A party filing an objection to this Report and Recommendation shall order a transcript of the suppression hearing and**

---

[10] The matter is set for calendar call on October 21, 2009. The parties should file any objections to this Report and Recommendation before that date.

**promptly provide a copy to the district court.**

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **15th** day of October, 2009.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All Counsel of Record